THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY AND THE ATLANTIC HIGHLANDS, RED BANK AND LONG BRANCH ELECTRIC RAILWAY COMPANY, PLAINTIFFS IN ERROR, v. GORDON BENNETT, DEFENDANT IN ERROR.

Argued November 28, 1898—Decided March 6, 1899.

The plaintiff picked up a wire that was lying in a public highway and was injured by an electric current. He brought suit against the telephone company whose wire it was and against the trolley company whose current, it was contended, did the harm. *Held*—

1. That the question whether the linemen of the telephone company had been reasonably diligent in discovering the fallen wire and in preventing probable injury was properly left to the jury; also, that

2. Whether the failure of the trolley company to use guard-wires was negligence by which the plaintiff was injured was for the jury.

3. Testimony that a witness had certain uses of his hand after an accident somewhat similar to the plaintiff's was properly excluded.

4. If the plaintiff used reasonable care in the selection of a reputable physician to cure his injury he cannot be kept out of damages because with a better physician he would have had better results.

On error to the Supreme Court.

For the New York and New Jersey Telephone Company, *Flavel McGee.*

For the Atlantic Highlands, Red Bank and Long Branch Railway Company, *Charles L. Corbin.*

For the defendant in error, *Edmund Wilson.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff, a countryman, who had driven into the town of Red Bank, stopped his horse near a drinking-fountain that stood at the intersection of Front and Broad streets, and in order to remove some wire that lay in the street between his horse and the fountain, picked it up and received through it a powerful electric current, that inflicted permanent injuries, for which he brought suit against the New York and New Jersey Telephone Company, whose wire it was, and against the Atlantic Highlands, Red Bank and Long Branch Railway Company, whose current, it was contended, did the harm.

The defendants were each maintaining wires in a public highway, in the exercise of a franchise, not of an easement; hence each was bound to take reasonable care not to injure other users of the street.   *Suburban Electric Co.* v. *Nugent,* 29 *Vroom* 658 ; *Cooper* v. *Trenton Passenger Railway Co.,* 31 *Id.* 219.

One factor in the measure of reasonable care is the probable result of negligence.   In the use of a powerful electric current in the public streets, reasonable care is great care.

If it was the duty of the telephone company to use reasonable care to prevent its wires, which were comparatively harmless, from coming in contact with naked wires, that carried a powerful electric current, and if it was the duty of the trolley company using such powerful current to protect its naked wires from such contact by the use of a degree of

care reasonably proportionate to the probable results, neither of these defendants has any just ground to complain of the charge of the trial court, for, by its charge, the court did not permit the jury to hold either of the defendants to so strict an account in its use of the public streets. On the contrary, in respect to each, its liability was limited to a single act of alleged negligence, upon which there was proof *pro* and *con.*

Against the trolley company the plaintiff was permitted to recover only in case he established that its failure to use guard-wires was negligence by which he was injured, and in regard to the telephone company the right to a recovery was confined to the single question of the reasonable diligence of its employes in discovering the fallen wire and in preventing the probable results. As propositions of law, neither defendant can complain of the submission of these issues to the jury, unless there was in the case no testimony competent to the establishment of the affirmative propositions of fact involved. That there was, with respect to the use of the guard-wires, such testimony appears from the summing up of the trial justice, which accurately shows the state of the evidence upon this point: "Experts in electricity and electric railways have been called on both sides. On the part of the plaintiff it is claimed by this expert testimony that the prudent management of an electric railway requires, and that it is usual in such management to have a guard-wire or guard-wires under such circumstances. On the part of the defendant railway company, the expert testimony is that it is not prudent to have such guard-wires, or, rather, to put it differently, that proper prudence does not exact it; that there is a balancing of dangers; that on the one hand you consider the constant danger that may come from such a wire being liable to be pulled down and especially at curves, and, on the other hand, the more or less infrequent danger of an overhead wire falling across the trolley wire, and that while in the early history of electric railways guard-wires were usual, their use had at the time of this accident been in many places abandoned. As I understand the few adjudged cases there are on this sub-

ject, it is a matter that must be left to you to determine as to what prudence required at this particular place, having regard to all the circumstances and with reference to the danger of one of the telephone wires falling upon the trolley wire." The submission of this question to the jury was clearly not erroneous.

Upon the question whether the conduct of the linemen of the telephone company showed reasonable care, there was likewise testimony upon which the verdict may legally rest. Several witnesses spoke of the interval of time that elapsed between the falling of the wire before it burned off and between its burning off and the accident to the plaintiff, estimating each period at from two to four or five·minutes. During these periods occurred the episode of the horse that became entangled in the wire. There was testimony also as to the attitude of the linemen during these periods, and that they had to be sent for before they came to the plaintiff's relief. As this is not a rule to show cause, it is immaterial whether the employes of the telephone company contradict this testimony or whether their version of the occurrence would absolve them from negligence. The question was a proper one to be left to a jury. It was properly submitted, and there was testimony that, if believed by the jury, established the negligence of the telephone company. The case turns upon the above propositions of fact, and not upon the application to them of any principle of law that is not thoroughly established.

The contributory negligence of the plaintiff was likewise a jury question, pure and simple. How much a countryman would know about the danger of picking up a wire in the streets of a town, what inferences he ought to have drawn from what he saw, and whether, on the whole, his conduct showed less than reasonable caution, were entirely within the domain of fact. Stress was laid upon the circumstance that he had seen the horse that became entangled in the wire, but that affair was susceptible of two inferences, one of which

was that the horse was scared by the mere contact with the wire, not by the transmission of an electric current.

Two questions to which objection was made by the telephone company were allowed by the trial justice upon which error has been assigned—first, whether the plaintiff in going with his horse direct to the fountain would have come in contact with the wire. This inquiry was proper; it bore upon the reasonableness of the plaintiff's conduct in removing the wire. The other question was whether the linemen were still up the poles when the plaintiff came in contact with the wire. This bore upon the conduct of the defendant's servants and was properly admitted. A number of questions that were put by the telephone company and overruled have become of no moment, for the reason that they concerned matters upon which the liability of the defendant was not permitted to turn. Finally, upon the question of damages the court below was clearly right in excluding the testimony of a witness called to tell how much use he had of his hand after an accident somewhat similar to the plaintiff's. Neither was there any error in the charge that if the plaintiff had employed a responsible and reputable physician he, the plaintiff, had a right to assume that the treatment was proper, and could not be kept out of damages because with a better physician he might have had better results. If he used reasonable care to select a reputable doctor it was enough.

There is in the case no error for which the judgment should be disturbed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 13.

*For reversal*—None.