(55 App. Div. 87.)

QUEE DRUG CO. v. PLAUT et al.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

1. CORPORATIONS—INDEBTEDNESS OF STOCKHOLDERS—ASSUMPTION—BILL OF SALE
—EXECUTION BY PRESIDENT—VALIDITY.

Q. and wife each owned a drug store, and, both being indebted to defendant for drugs purchased, Q. caused the plaintiff corporation to be organized to take over the business of both stores, issuing stock, which was divided between himself and wife and B., who received five shares without consideration. Q. promised defendants, before the corporation was organized, that the corporation would assume the individual debts of himself and wife, and thereafter Q., as president of the corporation, executed a note and chattel mortgage for such indebtedness. Thereafter a bill of sale of both stores was also executed by the corporation to defendants. *Held*, that defendants, having accepted such bill of sale in good faith, believing the corporation had assumed the indebtedness of Q. and wife, and that Q. was authorized to make the same, such bill was not objectionable as without consideration, and hence an action to annul the same was properly dismissed.

2. SAME.

Where the president of a corporation was intrusted with the entire management of the corporate business with the complete acquiescence of the other stockholders, he will be presumed to have authority to execute a bill of sale to secure the corporation's debts, and a bill so executed by him will be binding on the corporation.

Appeal from special term.

Action by the Quee Drug Company against Albert Plaut and another. From a judgment for defendants, plaintiff appeals. Affirmed.
See 64 N. Y. Supp. 52.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Henry L. Brant, for appellant.
Benjamin Estes, for respondents.

JENKS, J. The plaintiff corporation seeks to annul its bill of sale to the defendants on the ground that it was executed and delivered by its president without due authority. John Quee owned a drug shop in Bath Beach, and his wife was the nominal owner

of a second shop in Third avenue, Brooklyn, which Quee had purchased from his father's estate, but had taken in her name. Quee and his wife owed the defendants about $1,300 for drugs, and on January 31, 1898, they gave a note therefor. On February 10, 1898, Quee caused the Quee Drug Company to be incorporated with 100 shares of capital stock at the par value of $10 each. He owned 50 shares, his wife owned 45 shares, and one Bouton owned 5 shares, for which he paid nothing. John Quee was president, and his wife was secretary and treasurer. On February 11, 1898, Quee executed a paper wherein he recited the indebtedness of his wife and of himself in some $1,600 to the defendants, and agreed that as security he would transfer or cause to be transferred 55 shares of the plaintiff corporation, which might be reduced to possession by the following December. On February 14, 1898, Bouton assigned his 5 shares and Quee assigned 50 shares, both to the defendants. On April 30th the plaintiff, by Quee, made its corporate note to the defendants for $1,700, representing the past indebtedness, interest, and $70 due from the corporation for drugs sold to it, and also made a chattel mortgage. On June 3, 1898, the Quee Drug Company, by John Quee, president, executed a bill of sale to defendants of the Third avenue drug store, in consideration of one dollar and other valuable considerations; and on June 28th the defendants sold out the property in question. The special term has found that after the incorporation of the plaintiff the business of the said drug stores was conducted in the said corporate name, and said John Quee, the president, continued to manage and conduct the same, and transacted all the business of said stores as he had done before incorporation, and acted for the Quee Drug Company in all its said business, and generally transacted all the business of the plaintiff as before the incorporation, using the corporate name; and that Ida L. Quee and Charles W. Bouton knew that said John Quee was so acting, and acquiesced therein, and neither they nor the said Quee Drug Company restricted or questioned his right so to act. It also found that said John Quee, as president, continued to buy goods from the defendants for the plaintiff, and, at the time of the execution of the bill of sale the indebtedness of the company for goods bought of defendants was $70, or thereabouts, which, with the indebtedness for goods purchased of the defendants for the stores of said John Quee and his said wife before incorporation, amounted to upwards of $1,700. It also found that the goods in stock that the defendants had sold to John Quee and Ida L. Quee, for which they owed the defendants at the time of the incorporation, as well as the proceeds of such goods as had been sold and disposed of by them before the incorporation, were assigned and turned over by said John Quee and Ida L. Quee to the said Quee Drug Company, and were received by it in part consideration for the shares of capital stock of said company. It also found that the defendants in good faith believed that John Quee, as president, had authority to sign the bill of sale and act for the Quee Drug Company, and took it in good faith with that understanding and belief; and that the defendants were at the time of the incorporation

pressing the collection of their claim against John Quee and Ida L. Quee, but did not enforce payment prior to incorporation because of the agreement at the time that the Quee Drug Company was to assume and pay such indebtedness, and they relied upon such agreement, and in good faith believed that such agreement was binding, and consented to the transfer of the stores to the corporation. It also found that the sale of the Bath Beach store under said bill of sale was made in good faith by the defendants for the best price they could obtain, and that the president co-operated with the defendants, and made efforts to sell the same pursuant to the bill of sale. It also found that the bill of sale made to the defendants on the 3d day of June, 1898, was founded upon valuable consideration, and that the plaintiff is bound by the said bill of sale, executed as aforesaid, and thereupon dismissed the complaint. In Osborn v. Montelac Park, 89 Hun, 167, 35 N. Y. Supp. 610, affirmed in 153 N. Y. 672, 48 N. E. 1106, it was held that a corporation might loan its credit to its president, or mortgage its property for his debt, if the stockholders or the equitable owners of the stock did not object, and if no rights of creditors intervened. It is not suggested that there are any creditors in the case at bar. The evidence clearly sustains the finding that John Quee, prior to the incorporation, promised that the corporation would assume the debt. While engagements of promoters of a proposed corporation do not bind it, the corporation itself may adopt them as its own. Hall v. Hertey Bros., 83 Hun, 19, 22, 31 N. Y. Supp. 692, affirmed in 157 N. Y. 694, 51 N. E. 1091; Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544. Now, the answer in this case pleaded that the plaintiff was indebted to defendants in the sum of $1,770, or thereabouts, and that thereupon plaintiff gave to defendants a promissory note for $1,770, or thereabouts, as security for the payment of said indebtedness. The record shows that during the trial the plaintiff's counsel said:

"We will concede, in the interest of brevity, that the witness [John Quee] and his wife [Ida L. Quee], did give a note for their individual indebtedness just prior to the incorporation, and after the incorporation John Quee gave a note of the company for that same indebtedness, as alleged in the answer."

The evidence is overwhelming that John Quee, as president, was intrusted with the entire business and its management in every detail. In fact, he was the corporation. Morawetz, in his work on Corporations, adopts the language of the opinion in McKiernan v. Lenzen, 56 Cal. 61, 64, and states:

"The result of the cases seems to be that, where the management of the affairs of a corporation is intrusted to a general managing agent, he has power to assign the choses in action of the corporation to its creditors, either in payment of or as security for the payment of a precedent debt of the corporation, without express authority from the board of directors; and an assignment so made is valid."

The judgment should be affirmed, with costs. All concur.