(39 Misc. Rep. 586.)

### CURTIS et al. v. NATALIE ANTHRACITE COAL CO.

(Supreme Court, Trial Term, New York County. January, 1903.)

1. CORPORATIONS—CONTRACT OF PRESIDENT—RATIFICATION.

The selling agents of a coal company made advances for the conduct of its business. On foreclosure the assets were turned over to another company, which continued the same relations with the agents. *Held*, that the president of the company had power to bind it to pay the agents their advances to the old company; there being evidence that the successor company had knowledge of the assumption of the debt from other sources than the president.

Action by Grove D. Curtis and another against the Natalie Anthracite Coal Company. Judgment for plaintiffs.

George C. Austin, for plaintiffs.
Leonard D. Baldwin (Arthur J. Baldwin, of counsel), for defendant.

BLANCHARD, J. This case is submitted upon practically an agreed statement of facts, motions for a direction of a verdict having been made by both parties at the close of the case. It appears that the plaintiffs had carried on for a number of years certain business relations with the Penn Coal Company, defendant's predecessor in the business it now conducts. The plaintiffs, through whom most of the coal mined by the Penn Coal Company was disposed of, advanced certain sums of money to the Penn Coal Company by means of acceptances of shipments of coal, which shipments had not been received or sent at the time of these acceptances being given, but upon which the Penn Coal Company were able to realize. Foreclosure proceedings were instituted against the Penn Coal Company in 1892, and the property was finally sold at the close of the year 1894, and title to all assets and property of the Penn Company became vested in the defendant, a new company organized for the purpose of taking over this property. The officers and directors were the same in both the Penn Company and the Natalie Company, and the parties interested were the same in both. When this change in the ownership of the mining property became known to the plaintiffs, a conversation occurred with the president of the defendant company, wherein the plaintiffs were advised that their account was per-

fectly good, and would be cared for by the new company, and that the business relations would continue as of old. The old method of transacting business was continued, and the dispute now arises as to the condition of the account between the parties; this depending upon whether or not the president of the defendant had the right to bind the Natalie Company in assuming the obligation of the Penn Company to the plaintiffs, there being no dispute as to the fact that the president did agree to the assumption of the debt of the old company. The president was the party with whom plaintiffs' dealings were always had. He was the representative of the defendant in New York, and its only officer located here. It is true, no action was taken by the board of directors of the defendant company assuming the obligation of the Penn Company, but, on the other hand, no action was taken by the board in reference to the acceptances which were supplied by the plaintiffs, and there is some evidence to show that knowledge of the fact of the assumption of the obligation of the Penn Company was brought home to the defendant company through other sources than its president. I believe that, in view of all the circumstances of this case, I am justified in holding that the action of the defendant's president was binding on the company. Kraft v. Freeman Printing & P. Ass'n, 87 N. Y. 628, 629; Quee Drug Co. v. Plaut, 55 App. Div. 87, 90, 67 N. Y. Supp. 10; Cone v. Empire Plaid Mills, 12 App. Div. 314, 317, 42 N. Y. Supp. 160; Hall v. Herter Brothers, 90 Hun, 280, 35 N. Y. Supp. 769. The further claim is made by the defendant that the action of the president, even though binding upon the company, is ultra vires, as the defendant, by its charter, was not authorized to assume obligations of another company. The plea of ultra vires is not looked upon with favor when it will not advance justice (Whitney Arms Co. v. Barlow, 63 N. Y. 62, 69, 20 Am. Rep. 504), and, in my judgment, it would work a gross injustice to the plaintiffs were this plea permitted to prevail. It has been held that a corporation dealing in manufactured goods may, as a proper incident of its business, make advances to a manufacturer (Holmes v. Willard, 125 N. Y. 75, 25 N. E. 1083); and so I shall hold in the present case that it was not beyond the scope of the business of the defendant to assume an indebtedness of its predecessor to the plaintiffs, with whom the old relations were continued, and from whom it received advances of money necessary for the conduct of its business. The plaintiffs should have judgment, under the stipulation, in the sum of $5,472.88, together with costs and an extra allowance of 5 per cent.

Judgment for plaintiffs, with costs and extra allowance of 5 per cent.