HUDSON v. RAILROAD.

(Filed October 2, 1906).

*Railroads—Negligence—"Kicking" Cars—Accident—Contributory Negligence—Damages.*

1. In an action for damages for the negligent killing of plaintiff's intestate, where the defendant cut loose a car on a spur-track on a down grade, where, by its own momentum, it crashed into five other cars, stationary and two of them scotched, on the yard of an oil mill, and with sufficient force to drive them against a bumping-post, causing the death of the intestate, an employee of the mill, who was on the track at the time, and the defendant had no one in a position to give warning nor to exercise any control over the detached car, the Court did not err in refusing to hold that the killing was an excusable accident or that the intestate was guilty of contributory negligence.

2. In order that a party may be liable for negligence, it is not necessary that he could have contemplated, or even been able to anticipate, the

particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.

ACTION by Ned Hudson, administrator of James Hudson, against Atlantic Coast Line Railroad Company, heard by *Judge G. W. Ward* and a jury, at the June Special Term, 1906, of the Superior Court of EDGECOMBE.

This was an action to recover damages for alleged negligent killing of the plaintiff's intestate. The evidence on behalf of the plaintiff was as follows:

The defendant had constructed two tracks into the yard of the Edgecombe County Oil Mills for the receipt and delivery of freight of the mills. One of these tracks was along the side of the cotton-seed warehouse, so that the contents of cars on the track could be unloaded into the warehouse, the other track being placed some distance to the left of the first track as you entered the yard of the mills. At the end of the first track, and from 3 to 11 inches from one of the buildings of the mills, the defendant had placed a butting or bumping post to stop its cars. The distance between the mill building and this butting-post was 3 inches at the bottom and 11 inches at the top, and the rail of the track for several feet approaching the butting-post was raised at a very considerable angle, so that it would require force for a car to be shoved back to within 18 inches of the post; and between the butting-post and the mill building there were old iron and other débris, so that one could not pass between the mill building and the butting-post. The distance from the butting-post to the rear end of the coupler of a car placed so that the door of the car would be opposite the door of the cotton-seed warehouse is 27 inches. The distance from the butting-post to the western line of the Southern Oil Company's property over which the first track is

laid, is 108 feet 6 inches. The distance from the butting-post to the switch of the railroad company is 371 feet 11 inches. Just beyond the western line of the property of the Edgecombe County Oil Mills is the main street of the town of Tarboro and a plank sidewalk, over and across which the track is laid. This street and sidewalk were greatly traveled by the general public.

James Hudson, the intestate of the plaintiff, was in the employment of the Edgecombe County Oil Mills, and was a reliable young man earning 85 cents per day; he worked in a huller-room, the door of which opened to the left and about 12 feet from the butting-post.

The evening before the accident the defendant's servants with the shifting engine placed two cars of cotton seed of the mills on the track next to its seed warehouse, the doors of the cars being opposite the doors of the seed warehouse, to be unloaded the following morning. These cars were detached from the engine and scotched to prevent them from moving. Three other cars of the F. S. Royster Guano Company were, without the knowledge or consent of the Edgecombe County Oil Mills, and for the convenience of the defendant company, temporarily placed on this track beyond the two cars loaded with seed, as described, and within the yard of the mills. The day after the two cars of seed had been placed, as described, for the mills, and while two employees of the mills were in the cars unloading the same, the defendant took another loaded car belonging to the Royster Guano Company from still another track, brought it to the switch, and, while the same was in motion, cut it loose from its engine and it rolled down this track across the public plankway and the main street of the town and into the yard of the Edgecombe County Oil Mills, with such violence that it ran into the three cars already stationed there, and caused them to run back and into the two cars placed for the mills and opposite its seed warehouse, while the cars were

being unloaded, and caused them to roll back and into the
bumping or butting post. When this car was cut loose from
the engine, no signal was given to the employees of the mills
or to the public that it was coming. No one was on this car
that was turned loose. The men on the two cars unloading
seed felt a slight jar and the cars moved back about 18 inches.
The witness heard some one "holler" and went out and saw
James Hudson, the intestate, standing and leaning against
the bumper-post with his arms on it. He was "hollering"
and badly mashed—mashed sidewise, and died the next day.
The cars then rolled back from the post. No one saw Hud-
son go between the cars and the butting-post.

The grade from the switch to the scales, some 50 feet
within the yard of the Edgecombe County Oil Mills, is down
grade, and from the scales to the butting-post up grade. A
loaded car cut loose at the switch will run back and run into
the butting-post. There was a fence on the northern and
northwestern side of the property of the mills and a great deal
of wood was piled along this fence, and there were tanks and
other obstructions, so that one coming out of the huller-room
by the side of the butting-post could not see an engine or cars
at the switch. The cars standing on the track also obstructed
his view.

At the close of the evidence there was a motion for non-
suit, which was overruled, and the defendant excepted, and
in apt time the defendant requested the Court to instruct the
jury as follows:

1. That in law, upon the evidence the injury to James
Hudson was an accident, the defendant not being required
by law to foresee that a person would pass between the
coupling-head and the butting-post, in so short a space as
about 20 inches, and you will answer the issue as to defend-
ant's negligence, "No."

2. There being no disputed facts, what is contributory neg-
ligence is a question of law, and the Court instructs you that

if you believe the evidence the plaintiff's intestate was guilty of contributory negligence, and you will answer the issue as to contributory negligence, "Yes."

3. That if you find from the evidence the fact to be that James Hudson exposed himself to danger in going between the bumper-post and the end of the car, the space being 18 or 20 inches, then in law he would be guilty of contributory negligence, and you will answer the issue as to contributory negligence, "Yes."

The Court declined to instruct the jury as requested, and the defendant excepted. Verdict for the plaintiff. Defendant moved for a new trial for errors on the part of the Court: (1) in refusing the motion to dismiss as on judgment of nonsuit, and (2) for failing to instruct the jury as requested. Motion overruled, and defendant excepted and appealed from the judgment rendered.

No counsel for the plaintiff.
*John L. Bridgers* for the defendant.

HOKE, J., after stating the case: There were two objections urged upon our attention by counsel for the appellant: first, that on the entire testimony, if believed, the Judge should have held the killing of the intestate to have been an excusable accident; second, that on such testimony, as a matter of law the intestate was guilty of contributory negligence, barring a recovery. In our opinion, neither position can be sustained. We have held in *Ray v. Railroad,* 141 N. C., 84, that it is negligence to back a train into a railroad yard where passengers are rightfully moving about, without warning and without having some one in a position to observe conditions and to signal the engineer or warn others in cases of impending peril. This being a correct position, *a fortiori* would it be negligence under the conditions existing here.

The evidence shows that the defendant company, moving cars for its own convenience on a spur-track, cut loose a car on a down grade where by its own momentum it crashed into five other cars, stationary and two of them scotched, on the yard of the Edgecombe County Oil Mills, and with sufficient force to drive these cars from their position and against the bumping-post, causing the death of the intestate, an employee of the mills, who was standing on the track at the time. The defendant had no one in a position to ascertain and note conditions in the yard where the employees of the mills were accustomed and had a right to be, and no one was in a position to exercise any control over the detached car, even if the peril had been noted.

We agree with the Judge below that the undisputed testimony establishes a negligent act causing damage on the part of the defendant, and very certain it is that the Judge could not have held, as requested by defendant, that as a matter of law the defendant was in no way culpable. The reason assigned by the defendant for this contention is not well considered: "That the defendant was not required to foresee that a person would pass between the coupling-head and the butting-post in so short a space as about 20 inches." When one is guilty of a negligent act causing damage—negligent because some damage was likely to result—he cannot be excused because the damage in the particular case was more serious than he anticipated or different from what he had reason to expect. The doctrine is that "consequences which follow in unbroken sequence without an intervening efficient cause from the original wrong are natural, and for such consequences the original wrong-doer must be held responsible, even though he could not have foreseen the particular result, provided that in the exercise of ordinary care he might have foreseen that some injury would likely follow from his negligence." 16 A. and E. Enc. (1 Ed.), 438.

This was substantially held in *Drum v. Miller,* 135 N. C., 204. In that case a school-teacher threw a pencil at a pupil, which struck and injured the pupil's eye; and the Judge below on request of defendant instructed the jury: "Unless you find from the evidence that a reasonably prudent man might reasonably, or in the exercise of ordinary care, have expected or anticipated that the injury complained of would likely result from the defendant's act in throwing or pitching the pencil, you will answer the first issue, 'No.' " The jury answered the issue "No"; and on appeal, *Walker, J.,* for the Court, said: "It is not necessary that he should actually intend to do the particular injury which follows, nor indeed any injury at all, because the law in such cases will presume that he intended to do that which is the natural result of his conduct in the one case, and in the other he will be presumed to intend that which, in the exercise of the care of a prudent man, he should see will be followed by injurious consequences. In the case of conduct merely negligent, the question of negligence itself will depend upon the further question whether injurious results should be expected to flow from the particular act. The act, in other words, becomes negligent, in a legal sense, by reason of the ability of a prudent man in the exercise of ordinary care to foresee that harmful results will follow its commission. The doctrine is thus expressed and many authorities cited to support it in 21 A. and E. Enc. (2 Ed.), 487: 'In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.' It is not essential, therefore, in a case like this, in order that the negligence of a

party which causes an injury should become actionable, that the injury in the precise form in which it in fact resulted should have been foreseen. It is enough if it now appears to have been a natural and probable consequence of the negligent act, and the parties sought to be charged with liability for the negligence should have foreseen by the exercise of ordinary care that some mischief would be done."

In *Christianson v. Railroad,* 67 Minn., 94, it was held: "That where an act is negligent, the person committing it is liable for any injury proximately resulting from it, although he could not reasonably have anticipated that the injury would result in the form and way in which it did in fact happen." And *Mitchell, J.,* in delivering the opinion of the Court, said: "It is laid down in many cases and by some text-writers that in order to warrant a finding that negligence (not wanton) is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent act, and that it (the injury) was such as might or ought, in the light of attending circumstances, to have been anticipated." Such or similar statements of law have been inadvertently borrowed and repeated in some of the decisions of this Court, but never, we think, where the precise point now under consideration was involved.

The doctrine contended for by counsel would establish practically the same rule of damages resulting from tort as is applied to damages resulting from breach of contract, under the familiar doctrine of *Hadley v. Baxendale,* 9 Exch., 341. This mode of stating the law is misleading, if not positively inaccurate. It confounds and mixes the definition of negligence with that of proximate cause. What a man may reasonably anticipate is important, and may be decisive in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues. If a person had no reasonable ground

to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not. Otherwise expressed, the law is, that if the act is one which the party ought in the exercise of ordinary care to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening cause from the original negligent act, are natural and proximate; and for such consequences the original wrong-doer is responsible, even though he could not have foreseen the particular results which did follow. 1 Bevan Neg., 97; *Hill v. Winsor,* 118 Mass., 251; *Smith v. Railroad,* L. R., 6 C. P., 14. These and other decisions of like import from courts of the highest authority show that the position contended for by the defendant in its prayer for instructions on the first issue cannot be sustained.

The jury have found under proper instructions that the defendant was guilty of negligence causing damage; negligent as stated, because it permitted, without any control, a car to run on a down grade into the mill yard where it was likely to and did hurt one of the employees of the mills; and it cannot be excused because the employee, being in an unexpected and unusual position, received a greater injury than the defendant had reason to anticipate.

The position of the defendant on the question of contributory negligence is likewise untenable. The intestate, an employee of the mills, was at work in a room the door of which opened in 12 feet of the place where the killing occurred. He had gone there, no doubt, for his own personal convenience, and the existing conditions gave little or no indication that

his temporary position would be one of peril.  The cars in the mill yard were stationary and scotched, and other employees were at work in them at the time, unloading cotton seed. The circumstances did not require the intestate to anticipate that the defendant company, in disregard of its duty, would recklessly turn a car loose on a down grade, which would run into the yard, drive the stationary cars from their position, and crush out his life.

The charge of the Court, in leaving it to the jury to determine the question under the rule of ordinary care of a prudent man, was as favorable as the defendant had a right to expect. To hold, as requested by the defendant, that the intestate was guilty of contributory negligence as a matter of law, would have been clearly erroneous.  We find no error to the prejudice of the defendant, and the judgment below is
    Affirmed.