YOUNG FERRELL, AND YOUNG FERRELL, ADMINISTRATOR OF FREEMAN FERRELL, v. DURHAM TRACTION COMPANY AND SEABOARD AIR LINE RAILROAD COMPANY.

(Filed 19 December, 1916.)

1. **Negligence—Trespass—Torts of Third Persons.**

   The rule that one who is a trespasser upon lands cannot maintain an action against the owner for negligent injuries received by reason of conditions upon the premises has no application when the injury complained of was caused by the wrong of a third person having no connection with the owner or his proprietary rights.

2. **Railroads—Statutes—Riding on Trains—Invitation—Criminal Intent.**

   Revisal, sec. 3748, prohibiting persons other than employees from riding on trains, etc., was intended to punish such persons who ride on the

trains without permission of the conductor or engineer, with the intent of being transported free, and does not necessarily and as a conclusion of law apply where the person has been requested by an employee of the company to get on the train "to help unload freight at the next station"; and as to them no criminal intent will be imputed.

**3. Negligence — Telephone Companies — Torts — Reasonable Anticipation— Damages.**

The intestate was riding on top of a car of a freight train at the request of the company's employee to do so and help with the freight at the next station, and was struck from the top of the car to his death by a low hanging wire of a telephone company stretched across the railroad company's right of way. In an action by the intestate's administrator against the telephone company, wherein the defendant's negligence has been properly established, it is *Held*, the death of the intestate should reasonably have been expected to follow from the defendant's wrongful act, and a recovery will not be denied.

BROWN, J., dissenting; WALKER, J., concurring in dissenting opinion.

CIVIL ACTION tried at March Term, 1916, of DURHAM, before *Devin, J.*, and a jury.

On motion made in apt time there was judgment of nonsuit as to the railroad company, and the cause being submitted to the jury as to liability of the traction company, the following verdict was rendered:

1. Was plaintiff's intestate injured and killed by the negligence of the defendant Durham Traction Company, as alleged in the complaint? Answer: "Yes." .

2. Did plaintiff's intestate by his own negligence contribute to his injury and death, as alleged in the answer? Answer: "No."

3. What damages, if any, is plaintiff entitled to recover of defendant . Durham Traction Company? Answer: "$575.".

Judgment on the verdict for plaintiff, and defendant the traction company appealed, assigning for error chiefly the refusal to nonsuit as to appellant because of the alleged fact that intestate, at the time he was killed, was a trespasser on the train of its codefendant, and was also there in violation of the criminal laws of the State.

*Manning, Everett & Kitchin and S. C. Brawley for plaintiffs.*
*W. L. Foushee and W. J. Brogden for defendants.*

HOKE, J. The action was originally instituted against the Durham. Traction Company and the Seaboard Air Line Railway, and there is evidence on the part of plaintiff tending to show that on 7 April, 1915, about 7 p. m., the intestate, at the invitation of an acquaintance, a brakeman on a freight train of defendant railroad, was on top of a car of said train as it moved out of East Durham going north; that

the brakeman was giving the intestate and his brother this ride with the view and under promise of having them help in unloading freight at a near-by station on the route. There was testimony also to the effect that the train hands were accustomed to get help in this way, and that at previous times it had been done with the conductor's knowledge; that not far from East Durham, while intestate was on the car and going back towards the caboose, a power wire of the traction company, which had been stretched across the railroad and negligently allowed to sag so low as to threaten the safety of all persons on the car or trains of that character, struck the intestate as he was stepping from one car to the other, knocked him down between the cars, and he was run over and killed.

On these, the facts chiefly relevant, the court rendered judgment of nonsuit as to the railroad company, and, on issues submitted, there was verdict establishing that the intestate was killed by the wrongful negligence of the traction company, "as alleged in the complaint"; that there was no contributory negligence on the part of the intestate, and assessing the damages at $575. Judgment having been entered on the verdict, the traction company excepted and appealed, assigning for error chiefly the refusal to order a nonsuit as to appellant also.

It is undoubtedly the general rule that a trespasser cannot maintain an action against the owner for negligent injuries received by reason of conditions existent upon the premises, but this is a principle growing out of and dependent upon the right of ownership and considered essential to their proper enjoyment. All of the decisions in this jurisdiction, cited in support of defendant's exceptions, are cases of that character. *Briscoe v. Lighting and Power Co.,* 148 N. C., 396, and others. Even as to suits of that kind, the position has been very much qualified, as in case of technical trespass, etc., 29 Cyc., p. 443. But the principle referred to and relied upon has no necessary or proper application to the facts of this record, where the injury was caused by the wrong of a third person having no connection with the owner or his proprietary rights. In such case the general rule is the other way, and recovery is not ordinarily denied merely because of the fact that the injured party is himself a trespasser. Such fact may or may not be a relevant circumstance on the question of proximate cause, but is not allowed to defeat the action as a matter of law.

The distinction is very well presented in a case from New Jersey Law, p. 276, the relevant facts and the decision of the Court therein being as follows:

"The injury was caused by the guy wire breaking and falling on an electric light wire belonging to another company. The broken end fell in the grass in a field belonging to Gulick. Across this field people

were accustomed to travel without objection, but, as far as appears, without other right. The boy's body was found still in contact with the guy wire shortly after the shock. It does not appear that he had any right to be on Gulick's property except such as may be inferred from the facts stated. The contention of the defendant is that it was under no duty to the decedent for the reason that he was a trespasser on Gulick's property, or at best a mere licensee. The liability of the defendant rests upon the fact that it was maintaining wires which might become charged with a deadly current of electricity. *New York, etc., Tel. Co. v. Bennett,* 62 N. J. L., 742, 42 Atl., 759; *Brooks v. Consolidated Gas Co.,* 70 N. J. L., 211, 56 Atl., 168.

"The duty to exercise care is established as to travelers upon the highway and employees of the defendant or of another company who in the exercise of their rights are likely to come in contact with the wires, and of persons who are lawfully in a place of proximity to the wires. The question presented in this case is whether the duty exists also as to third persons who are not at the time in the exercise of any legal right. The principle underlying the case is stated by *Chief Justice Beasley* in *Van Winkle v. American Steam Boiler Co.,* 52 N. J. L., 240, 19 Atl., 472, to be that in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons, known or unknown, the law, *ipso facto,* imposes as a public duty the obligation to exercise such care and skill.

"The test of the defendant's liability to a particular person is whether injury to him ought reasonably to have been anticipated. In the present case the guy wire was stretched over an open field, across which people were accustomed to travel without objection by the landowner. The adjoining field was used as a ball ground. It was probable that if the guy wire broke some one crossing the field would come in contact with it. That whoever did so was a trespasser or a bare licensee as against the landowner cannot avail the defendant. If a bare licensee, he would still be there lawfully. If a trespasser, his wrong would be to the landowner alone, not a public wrong nor a wrong to the defendant.

"The case differs from one where a trespasser or licensee seeks to recover of the landowner. A landowner may in fact reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with. His right to protect his possession and to use his property is paramount."

In Watson on Damages for Personal Injuries, speaking to the question, the author says: "At the outset it may be stated, as a general rule, that the mere fact that the plaintiff at the time of the injuries received

is engaged in the commission of an unlawful act is not sufficient to relieve the author of the wrong for liability in damages therefor. 'The question how far a person can defend an otherwise indefensible act,' it has been said, 'by showing a criminal or unlawful act on the part of the party injured, has of late years been fully discussed in the courts of this country and England. The result generally reached is that no man can set up a public or private wrong committed by another as an excuse for a willful or unnecessary or even negligent injury to him or his property. This principle is defended on the grounds of morality and law, and it reaches and determines a great variety of cases.' Thus the fact that the plaintiff was upon the platform of a street car in violation of a municipal ordinance is not of itself sufficient to defeat a recovery in an action against the driver of a vehicle by whom the driver was injured. And that a motorman was running his car at a higher rate of speed than allowed by law when a tree fell upon the car and injured him is not a defense in an action against the municipality, merely because had he been going at the legal rate the tree would have fallen before he reached the point in question."

And the general principle is approved in many well considered decisions of other courts. *Phil., etc., Ry. v. Towboat Co.,* 64 U. S. (23 Harvard), pp. 209-218; *Sutton v. Wanwatosa,* 29 Wis., 1; *Delaware, etc., Ry. v. Trautweine,* 52 N. J. L., 169; *Cameron v. Vandegrift,* 53 Ark., ....; *Electric Co. v. Melville,* 210 Ill., 70; and Curtis on Electricity, sec. 462, is to the same effect. There are many other authoritative cases in support of the principle as stated: that an injured party is not barred of recovery for a wrong done him because of the mere fact that he was, at the time, a trespasser upon the premises of a third person. Such a fact in itself is ordinarily allowed no significance in determining the rights of the parties on such an issue, a position emphasized in this case by facts in evidence tending to show that the traction company was itself a trespasser in carrying its wires over the railroad company's line. *Daltry v. Power Co.,* 208 Pa. St., 403; *Caglione v. M. T. Morris Electric Co.,* 67 N. Y. Supp., 10. It is suggested for defendant that the intestate was in violation of State statute in being on the car at the time. Revisal, sec. 3748. This statute was enacted to punish persons who ride on a train without permission of the conductor or the engineer and with intent of being transported free, and would seem to have no application to this case, where the intestate had been invited to get on by an employee of the company "to help unload freight" at the next station. Assuredly a criminal intent to avoid payment of fare should not be decided against him as matter of law when there are facts in evidence tending to show that he "was to pay his fare by helping to unload"; that he had done

this several times with the knowledge and approval of the conductor, and, at the time he was struck, was going along the top of the car to the caboose.

In some of the authorities cited in support of appellant's position, as in *Tel. Co. v. Martin,* 116 Ky., 554, and others, the Court does not seem to have been sufficiently advertent to the recognized distinction in cases where the action by a trespasser was against the owner of the premises and when against third persons; but, in any event, these decisions should not be allowed as controlling on the facts of this record. In *Drum v. Miller,* 135 N. C., 204, the Court held, in effect: "In order that a party may be liable for negligence, it is not necessary that he could have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act or omission, or that consequences of generally injurious nature might have been expected," a statement of the doctrine contained in 21 A. and E. Enc. '(2 Ed.), p. 487.

A like ruling was soon thereafter made in *Hudson v. R. R.,* 142 N. C., 198, and the principle has been again and again approved in our decisions. *Robinson v. Mfg. Co.,* 165 N. C., 495; *Ward v. R. R.,* 161 N. C., 184; *Sawyer v. R. R.,* 145 N. C., pp. 24-28; *Kimberly v. Howland,* 143 N. C., '399, and numerous other cases could be cited.

Speaking to the question in *Drum v. Miller,* 135 N. C., 214, *Walker, J.,* said: "When, therefore, a willful wrong is committed, or a negligent act which produces injury, the wrong-doer is liable, provided in the latter case he could have foreseen that harm might follow as a natural and probable result of his act; for if he can presume that harm might naturally and probably follow, he must necessarily intend that it should follow or he must have acted without caring whether it would or not, which, in effect, is the same thing. It may be stated as a general rule that when one does an illegal or mischievous act which is likely to 'prove injurious to another, or when he does a legal act in such a careless or improper manner that he should foresee, in the light of attending circumstances, that injury to a third person may naturally and probably ensue, he is answerable in some form of action for all of the consequences which may directly and naturally result from his conduct. It is not necessary that he should actually intend to do the particular injury which follows, nor, indeed, any injury at all, because the law in such cases will presume that he intended to do that which is the natural result of his conduct in the one case, and in the other he will be presumed to intend that which, in the exercise

of the care of a prudent man, he should see will be followed by injurious consequences."

The verdict in this case has established that the traction company has negligently allowed its power wire to sag so low over the line of the railroad that it was likely to kill or seriously injure any and every one on the top of the railroad company's trains. The intestate was killed because of this negligent wrong. It was the result likely—in fact, almost certain—to occur from its wrong, and, in our opinion, the defendant's responsibility for it has been correctly and properly established.

There is no error, and the judgment of the lower court is affirmed.

No error.

BROWN, J., dissenting: I am of opinion that the motion to nonsuit should have been allowed. The evidence, taken in its most favorable view for plaintiff, tends to prove these facts:

The intestate was killed on 7 April, 1915. At the time he was on top of a running freight train of the railway company, walking towards the caboose. He was caught by two wires belonging to the traction company, stretched across the railway right of way by its consent and fastened to juniper poles 143 feet apart, one on the east and one on the west side of the right of way about 2 miles from Durham. The intestate was thrown to the ground between the cars and killed. The intestate was not an employee of the railway company, but was riding on top of the rapidly running freight train without the knowledge or consent of the conductor or of any proper authority of said company.

It is in evidence that one Howard Holeman, a brakeman, invited the intestate to ride on the train. No one else knew of it. There had been an extraordinary snowstorm and wind, 2 and 3 April, 1915, that had caused the wires to sag so low that they caught the intestate about the shoulder and threw him under the wheels. The wires were in proper position on 2 April, and defendant traction company had no notice that they were sagging as result of the storm.

That the intestate was a trespasser as to the railway company, and violating the statute, Revisal, 3748, making it a misdemeanor to ride on top of the freight train under such circumstances, cannot successfully be questioned. *Vassor v. R. R.,* 142 N. C., 68; *Bailey v. R. R.,* 149 N. C., 169.

The statute is explicit, and forbids any person other than a railway employee in the discharge of his duty from riding or attempting to ride on top of any car, coach, engine, or tender on any railroad without authority from the conductor of the train or the engineer, and

makes it a misdemeanor to do so. If the intestate was a trespasser, the railway company, the owner of the premises, owed him no duty except to refrain from inflicting willful or wanton injury; and the defendant, the traction company, owed him no greater duty than did its lessor, the railroad company. The poles of the traction company were put on the land of the railroad company and its wires crossed its tracks by its consent. It was not required to foresee that the plaintiff would violate the statutes of the State and put himself in a position of danger where he would possibly come in contact with its wires. *Willis v. R. R.,* 122 N. C., 909; *Vassor v. R. R., supra; Peterson v. R. R.,* 143 N. C., 260; *Quantz v. R. R.,* 137 N. C., 136.

If the plaintiff had been an employee of the railroad company, or rightfully on top of the car, it would be different. If the railway company, the owner of the right of way, over which the wires of the defendant were stretched, owed the plaintiff's intestate no duty except to refrain from inflicting willful or wanton injury, then the defendant could not be held to a higher degree of care than the owner of the premises, upon which rested the primary duty of keeping its premises and right of way reasonably safe.

The railway company owned the right of way and had the right to stretch its telegraph and telephone wires along and across its right of way with its wires. If mischief happened to a trespasser by reason of the wires being stretched across the right of way, it is his fault. He is held to assume the risk. The implied duty to prevent harm from unsafe premises does not exist in favor of a trespasser. *McGhee v. R. R.,* 147 N. C., 147.

The *Benton case,* 165 N. C., 354, does not controvert this well settled proposition. Benton was not a trespasser upon the service company's property, but had climbed a tree and come in contact with a sparking wire with defective insulation. The question presented by this appeal is well settled and fully discussed in many cases, and we need not dwell on it further. *Briscoe v. Lighting Co.,* 148 N. C., 396; *Telephone Co. v. Odom,* 70 S. E. Rep., 1116; *Telegraph Co. v. Martin,* 116 Ky., 554; *McCaughna v. Electric Co.,* 129 Mich., 407.

MR. JUSTICE WALKER concurs in this opinion.