Judgment affirmed.

# Kibele *versus* City of Philadelphia.

1. Municipal authorities will be presumed to have knowledge or notice of a defect in a sewer or gas main, which they might have discovered by the exercise of proper and reasonable diligence.

2. If a person knew that illuminating gas was escaping into his house from a main, and that it might explode, it would be his duty to take suitable precautions for his safety. Whether he had such knowledge or not is a question for the jury.

3. One who is not an expert and whose education is not such as necessarily to involve some knowledge of chemistry, will not be presumed to know that illuminating gas, when mixed in certain proportions with common air, is explosive.

4. A. was injured by an explosion of illuminating gas, which had found its way into his house through an untrapped drain leading from a municipal sewer. The gas had gotten into the sewer from a gas main, whose end had been stopped by a wooden plug, which had rotted out. A patrolman and other witnesses testified to having smelt the illuminating gas in the immediate neighborhood of A.'s house a week or ten days before the explosion. *Held:* That this evidence should have been submitted to the jury to determine whether the municipal officers by the exercise of proper and reasonable diligence could have discovered the defect in the gas main in time to have had it properly repaired before the explosion.

[Kibele *v.* The City of Philadelphia.]

January 14, 1884.   Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1 of *Philadelphia county :* of July Term, 1883, No. 13.

Case, by Eugene Kibele against the City of Philadelphia, to recover damages for injuries sustained by himself and wife, and the loss of personal property, through the alleged negligent maintenance by the defendant of a defective gas main. Plea, not guilty.

On the trial, before PEIRCE, J., the testimony on behalf of the plaintiff was to the following effect:—The city had laid the gas main in question along Haverford street between Thirty-sixth and Thirty-seventh streets several years previous to the accident by which the plaintiff sustained the injuries complained of.   The dead end of the main at Thirty-seventh street was closed by a wooden plug which subsequently rotted away.   The gas thus escaped from the main into an adjoining city sewer, and found its way through this sewer into a drain connected with a house, No. 3610 Haverford street, then rented and occupied by the plaintiff.   It accumulated in great quantities under his back kitchen and finally exploded from ignition at the kitchen range, and caused the injuries complained of.   Several witnesses, among them a patrolman, testified to having smelt gas in the immediate neighborhood of the defendant's house for a week and more prior to the explosion. Several others testified to having smelt the gas in defendant's house.   Dr. Pusey, defendant's family physician, testified that he had smelt the gas in the house for a week or ten days before the accident ; that it was noticeable as a common thing ; that the gas made the atmosphere of the house oppressive, and he had called the attention of Mrs. Kibele and other members of the family to the smell of gas.

The plaintiff testified:  " I never noticed the smell in the house.   I did not notice it in the neighborhood, until that time when I went up.   I never smelled city gas before I was blown up.   I smelled sewer gas at the hydrant.   I only smelled sewer gas in the kitchen occasionally.   I am sure that it was not sewer gas that caused the explosion, just from the smell of the gas.   Whenever there was a damp day I smelled the sewer gas.   I never smelled it in the house.   Sometimes you could smell it at the hydrant in the kitchen next the range : what is called the sink.   There was no very great volume of it.   There was always more or less smell there.   I can tell illuminating gas from sewer gas.   I smelled the sewer gas as long as I have been in that house.   Since 1876.   I never tried to remedy it in any way.   I did not know how gas could be kept out of the house.   I knew sewer gas was escaping from

the drain. I knew sewer gas was escaping all the time. I didn't know that the drain was defective. I know it now. I smelled gas all the time escaping from the drain. I didn't know that sewer gas could be kept out by traps."

Upon the conclusion of the plaintiff's testimony, the court, on motion of the defendant, entered a compulsory nonsuit on the grounds: (1.) That no actual notice of the defective condition of the main appeared to have been given to the defendant; and (2.) That the defendant, having noticed the smell of sewer gas prior to the explosion, and not having investigated the cause of its escape, or done anything to prevent it, had been guilty of contributory negligence. A motion to take off the nonsuit having been refused by the court in banc, the plaintiff took this writ of error, assigning for error the action of the court in refusing to take off the nonsuit.

*Alexander Simpson, Jr.*, for the plaintiff in error.—The city authorities were bound to exercise a reasonable degree of care and watchfulness in ascertaining the condition of its gas main and in repairing it. This they failed to do, and rely, as an excuse for negligence on want of notice of the condition of the plug. As the rotting away of the plug could have been discovered by the exercise of a reasonable degree of care on the part of the city, she is charged with constructive notice, and no actual notice was necessary. Vanderslice *v.* City, 7 Out., 102; Article in Albany Law Jour., Dec. 26, 1874, 401, and cases there cited: Cooley's Constitutional Limitations, *249. The long continuance of the escape of gas in this case affects the city with constructive notice. McLaughlin *v.* Corry, 27 P. F. S., 109: Dillon on Munic. Corp., (3d ed.) § 1017, and cases there cited. The plaintiff in error knew nothing of the escape of illuminating gas into his premises, and could not therefore be charged with contributory negligence. To bar his right of action, his negligence must be the proximate cause of the injury and not the remote cause; and it must also be such negligence as naturally would result in the exact injury which is the subject of the action. In both these respects, even if it be held that the plaintiff was negligent, the negligence fails to be of that character to debar the action. Oil City Gas Co. *v.* Robinson, 3 Out., 1.

*Abraham M. Beitler* (with him *William Nelson West*), for the defendant in error.—Vanderslice *v.* City, 7 Out., 102, decided that where an alleged defect in a sewer was "patent for a long time prior to the injury," the city will be charged with constructive notice of such defect. There, the sewer had been out of order for three years. Here, the escape of gas had

been noticed for only a week prior to the accident. It is submitted that a week is not a sufficient period of time to bring this case within the rule of Vanderslice *v.* City.

Mr. Justice GORDON delivered the opinion of the court, February 18, 1884.

We think the evidence in this case was sufficient to require its submission to the jury. The immediate cause of the injury to the plaintiff was undoubtedly the defective gas pipe, and the material question was whether of this defect the city had either actual or constructive notice. There can be no serious question of its liability for damages to a citizen resulting from its wilful neglect in a particular of this kind. Admitting then that the main was in all respects properly constructed and secured, and this was a question for the jury, yet if the city officials did know, or ought to have known, previously to the time of the explosion, that it was in a defective condition, and failed to have it properly repaired, that would be such a default as would fix the liability of the city. But notice or knowledge will be assumed where the circumstances are such that the municipal authorities, by the exercise of proper and reasonable diligence, might have known of the defect which caused the damage complained of. McLaughlin *v.* The City of Corry, 27 P. F. S., 109; Fritsch *v.* City of Allegheny, 10 Nor., 226. In the latter case Mr. Justice MERCUR, in delivering the opinion of the Court, says: "Negligence is the absence of proper care, caution and diligence; of such care, caution and diligence, as under the circumstances reasonable and ordinary prudence would require to be exercised. It may consist as well in not doing the thing which ought to be done, as in doing that which ought not to be done, when in either case it has caused the loss and damage to another. Hence, in this case, one question to be determined is, whether the municipality acting through its officials, failed to exercise such care and diligence in not ascertaining the nuisance, and in not removing it prior to the injury sustained by the plaintiff." In the case under consideration, as in the one cited, the question is, could the city officials by the exercise of a proper diligence, have discovered the defect in the gas main in time to have had it properly repaired before the explosion. Several witnesses, and among them one of the city's patrolmen, speak of smelling the escaping gas a week or ten days before the accident. Here then was the certain indication of a broken pipe and the need of immediate repairs. It might well be supposed that within the space of a week or ten days, the proper officers ought to have discovered a gas leak which was alike offensive and dangerous to a whole neighborhood, and it might also be sup-

[Kibele *v.* The City of Philadelphia.]

posed that it was part of the business of a patrolman, on discovery of such a leak, to have informed those officers. All these however were questions for the jury, and to that body this evidence ought to have been submitted.

The question of contributory negligence was also one for the jury. If the plaintiff knew that illuminating gas was escaping from the main, and also knew that from it an explosion might reasonably be expected, it was his duty to have withdrawn from the premises, or to have taken other precautions for his safety, until the leak could be discovered and stopped. He could not knowingly take upon himself such a risk as this, the risk of an explosion, and for its consequences charge the city. In such case both parties would be chargeable with negligence; both contribute to the accident, hence one could not charge the other with the resulting damages. A good deal has been said in the argument of this case about the defectiveness and untrapped condition of the plaintiff's sewer, and an endeavor has been made through it to charge him with contributory negligence. But this matter has nothing at all to do with the case. If he had a bad or imperfect branch sewer, he must run the risk of the deleterious effects of sewer gas, for that must be expected in a common sewer, but he had no right to expect that it would become a conduit for illuminating gas ; as well might he expect that it would be made a storehouse for gunpowder. Again, it is urged that the plaintiff ought to have notified the authorities. Undoubtedly he ought so to have done if he knew that his house was being filled with illuminating gas, and if he also knew the dangerous character of that article. But he was not bound to know that when mixed in certain proportions with the common air it was explosive. As was said in the case of the Oil City Gas Company *v.* Robinson, 3 Out., 1, such knowledge might be presumed of an expert, or of one whose education would necessarily involve some knowledge of chemistry, but it would be going too far to presume such knowledge of a saloon-keeper. The city, however, as a manufacturer and vendor of gas, was bound to know all about its character, and to take care that, through the default of its officers or servants, the article which it manufactured and sold was the occasion of harm to no one.

The judgment of the Court below is now reversed, and a new venire ordered.