## M. D. BAILEY, Jr., v. CITY OF WINSTON.

(Filed 22 November, 1911.)

1. Cities and Towns—Ditches for Improvements—Sewerage and Water—Authority to Construct.

An incorporated town or city has authority to dig ditches in its streets for the purpose of laying mains or pipes in the construction of a water or sewerage plant, or to let out work of this character to another under contract.

2. Cities and Towns—Streets and Sidewalks—Excavations—Guards and Lights—Negligence—Contributory Negligence—Evidence—Questions for Jury.

In an action against a city or incorporated town for damages sustained by a pedestrian in falling, at night, into an open ditch made for the purpose of laying water or sewer pipes by the defendant's contractor, alleging negligence on defendant's part in not having it properly guarded, the question of defendant's negligence upon conflicting evidence is one for the jury.

BAILEY *v.* WINSTON.

3. **Cities and Towns—Excavations—Dangerous Conditions—Pedestrians—Lights and Guards—Ordinary Care—Negligence.**

It is the duty of a city or incorporated town to exercise ordinary care in guarding dangerous places in the streets, caused by ditches and excavations made in pursuance of its authority, with proper lights and barriers for the safety of pedestrians at night.

4. **Cities and Towns—Streets and Highways—Dangerous Conditions —Reasonable Care—Supervision.**

A municipality owes it as an absolute duty to put its streets and highways in passable condition and to keep them so by the exercise of reasonable and continuing care and supervision for the safe use of pedestrians thereon.

5. **Same—Defects—Notice, Express or Implied—Supervision.**

The ordinary liability of a municipality to a pedestrian injured by negligent defects in its streets or sidewalks depends upon whether the municipality had actual notice of the defect, or notice implied from the circumstances, as where the defect has existed for such a length of time as to show that the city has omitted or neglected its plain duty of supervision.

6. **Cities and Towns—Streets and Highways—Dangerous Conditions —Positive Duty—Contractor—Negligence.**

The duty of a municipality to keep its streets and sidewalks in repair and free from dangerous pitfalls is a positive one, which it cannot delegate to others to perform so as to relieve itself from liability for nonperformance, or for negligence in the manner of doing the requisite work in the proper way.

7. **Same—Wrongful Acts—Fixed Notice.**

The doctrine as to implied notice of a defect in a street or sidewalk, which causes an injury to a pedestrian, is not applicable when the very danger is created by the municipality itself or by some one under its direction, for then it is fixed with notice and liable for the damages proximately resulting from its negligence.

8. **Cities and Towns—Streets and Highways—Dangerous Conditions —Positive Duty—Contractor—Negligence—Liability of City.**

A city may not contract with another to make excavations in its streets or sidewalks, which it is authorized to do, and thereby escape liability for the negligent acts of its contractor, which cause an injury to a pedestrian.

**9. Evidence—Hypothetical Questions—Sufficiency of Testimony— Questions of Law—Questions for Jury.**

It is competent for a judge to decide whether there was any evidence of the facts assumed to exist in asking a hypothetical question of an expert, and then leave it to the jury to say whether the facts had been established by the proof, and instruct them, if they had not been, to disregard the answers.

**10. Witnesses—Impeaching Questions—Evidence.**

Evidence tending to show bias on the part of a witness is competent, as it enables the jury to properly weigh and consider his testimony.

APPEAL from *W. J. Adams, J.,* at March Term, 1911, of FORSYTH.

This action was brought by the plaintiff to recover damages for injuries sustained by his falling into an unprotected sewer-ditch, which was being constructed on Liberty Street, within the corporate limits of the city of Winston. The plaintiff alleged that the ditch was not properly guarded and protected on the night that he fell into it and was injured; whereas the defendant averred that it was sufficiently protected, and if plaintiff suffered injury, he brought it upon himself by his own carelessness and negligence, and also by reason of the fact that he was intoxicated.

The principal matters involved in the case were questions of fact, and the plaintiff offered evidence to sustain his contention—that is, that the ditch was not properly guarded and protected, and that he was not intoxicated. The defendant offered evidence to the effect that the plaintiff was a drinking man, that the ditch was protected by sufficient lights, ropes, and other barriers. Upon the issues thus raised the jury adopted the plaintiff's version of the facts and rendered a verdict for him, as appears in the record. The defendant appealed from the judgment entered upon the verdict.

*L. M. Swink and J. E. Alexander for plaintiff.*
*Manly, Hendren & Womble for defendant.*

WALKER, J., after stating the case: It appeared that the ditch was 2 feet wide and 9 feet deep, and was so near the path in common use, and in such an exposed position with reference to

the street, that it became necessary to safeguard pedestrians and others using the sidewalk and street by placing lights or barriers, or both if the situation required them, at or near the excavation, so as to prevent an injury to them by falling into the ditch. The city had the clear right to dig the ditch for the purpose of laying mains or pipes, in the construction of a water or sewerage plant, and to employ the Bibb Company to do the work; but it did not, by reason of that fact, shift its duty and responsibility to those using its streets and who are injured by any defect in them, provided it had or should have had notice of the defect. The plaintiff had the right to use the street in going from the Zinzendorf Hotel, where he was boarding, to Gentry's Dog and Pony Show, under the circumstances shown in the evidence. The jury found, under proper instructions from the court, that he was not guilty of contributory negligence, so that the only remaining question is, Was the ditch properly guarded?

The defendant contended, and introduced evidence to prove, that it was, and that the injury was not caused by any negligence in that respect, either of the city or the independent contractor—assuming, for the sake of discussion, that the Bibb Company was such a contractor.

Evidence was introduced by the plaintiff to show that there was negligence in the fact that no proper safeguards had been placed at or near the ditch to warn approaching pedestrians, or others using the street, of the danger.

The defendant excepted to the charge of the learned judge (*W. J. Adams*) upon the ground that he had told the jury that it was the duty of the defendant to guard the dangerous place both with lights *and* barriers; but we do not so understand the very able and clear-cut charge of the judge; on the contrary, he instructed the jury that the defendant was required to exercise only ordinary care in the matter, and to guard the place by "lights or barriers" or in such other way as was reasonably sufficient for the protection and safety of the public. The charge was eminently fair and just to both parties, and after a careful consideration of it, we think it stated fully, and with remarkable clearness, the principles of law applicable to the facts, as the jury might find them to be, and is entirely without error.

BAILEY *v.* WINSTON.

The city of Winston was under the duty to keep its streets in proper condition and repair, and if in prosecuting any work of public improvement it became necessary to dig a ditch in one of them, the law requires that it should protect the public against injury therefrom, by sufficiently guarding the dangerous excavation in the exercise of such care, at least, as a prudent man would use under like circumstances. The duty and liability of a municipality in this respect is well stated in Moll on Independent Contractors and Employers' Liability, secs. 139-140, though we do not quote him literally: It is not easy to determine when a municipality is liable for the negligence of a contractor. It certainly cannot relieve itself from the duty which rests upon it by transferring that duty to the contractor. The corporation must see that the public is properly protected, and if the contractor fails to perform that duty, the city is liable for the resulting damage. The city will be responsible for the acts of an independent contractor if the matter involved in his contract is one of absolute duty owed by the city to an individual or the work is intrinsically dangerous, or when properly done creates a nuisance. It is the general rule that a city will be liable for the negligence of a contractor in its employ, where the work is performed under the direct control of the city's own officers. If otherwise liable, a city will continue liable although it has no control over the workmen of a contractor, and although it has, in its agreement with the contractor, stipulated that he shall be liable for accidents occasioned by his neglect. If the work be done by an independent contractor, the city will not be answerable where the injury is through some negligence of the contractor or his servant, not amounting to a failure of a duty which the city itself owes to the person injured; otherwise it would be liable for his neglect in like manner as where the work is executed by its officers. Whether the city will be jointly liable with a contractor, must depend on the circumstances of the case. If, for example, an excavation is left unguarded or unlighted by the contractor during the progress of the work, and the city has notice of its dangerous condition, express or implied, then the city will be liable to a traveler who, without fault on his part, is injured by driving or falling into

it, because it would be liable if the excavation were made by a stranger. It may be said, generally, that it is as much the duty of a municipality to remove or guard against an obstruction to a public highway placed there by a third person as if it was so placed by the city itself; provided the city has actual or implied notice. The duty of the city to erect barriers and to establish signals in case of dangerous defects, etc., in the highway is not discharged by engaging a contractor to perform it. But where the negligence relates to a matter with reference to which the corporation is under no special obligation, the liability rests on the contractor alone. The generally accepted doctrine in this country is said to be "that a municipality which is charged with the duty of keeping certain highways in safe condition for public travel, and which has either authorized, or has been constrained by the operation of statute to permit, the performance of work which, in the absence of certain precautions, will necessarily render one of these highways abnormally dangerous for the time being, is liable for injuries caused by the absence of these precautions, whatever may be its relation to the party who is actually engaged in doing the work. The municipality lies in this regard under a primary, absolute, or nondelegable duty, in the performance of which it is bound to use reasonable care and diligence." Moll Ind. Contractors, p. 243, note 71, and cases cited in that and the other notes to sections 139 and 140, especially *Bennett v. Mount Vernon,* 124 Iowa, 537, where it is said: "If the matter involved was one of positive duty to the plaintiff, then, of course, the defendant town could not relieve itself by delegating the work to an independent contractor. Or if the work itself was intrinsically dangerous, or, when properly done, was likely to create a nuisance, the defendant town would be responsible for any damage resulting therefrom. *Wood v. Ind. Dist.,* 44 Iowa, 30." The same doctrine is stated in *Brusso v. City of Buffalo,* 90 N. Y., 697, as follows: "The defendant's counsel claims that before the city can be made liable, it must be shown that it had notice of the dangerous condition of the street. But that rule does not apply to a case like this. The city was under an absolute duty to keep its streets in a safe condition for public travel and was bound to exercise

reasonable diligence and care to accomplish that end, and when it caused this excavation to be made in the street it was bound to see that it was carefully guarded, so as to be reasonably free from danger to travelers upon the street. It is not absolved from its duty and its responsibility because it employed a contractor to make the excavation. That is settled by a long line of decisions in this and other States. (*Storrs v. City of Utica,* 17 N. Y., 104; *Chicago City v. Robbins,* 2 Black (U. S.), 418; *Robbins v. Chicago City,* 4 Wall., 657-659; *Water Company v. Ware,* 16 *id.,* 566; *City of St. Paul v. Seitz,* 3 Minn., 297; *City of Logansport v. Dick,* 70 Ind., 65, 36 Am. Rep., 166; Dillon on Municipal Corporations, secs. 791, 792, 793.) There was a controversy upon the trial of the action as to whether the excavation at the place where the plaintiff was injured was properly guarded. The verdict of the jury is conclusive upon that point in favor of the plaintiff. It is claimed that there was a stone walk across the street, and that if the plaintiff had crossed upon that walk he would not have been injured. But a person desiring to cross the street, either in the nighttime or in the daytime, is not confined to a crossing. He has a right to assume that all parts of the street intended for travel are reasonably safe; and if, in the nighttime, he desires to cross from one side to the other, and knows of no dangerous excavation in the streets, or other obstruction, he may cross at any point that suits his convenience, without being liable to the imputation of negligence. (*Raymond v. City of Lowell,* 6 Cush., 524, 530.) It was claimed that the proof showed that the place where this excavation was made was not in one of the streets of the city, but that it was in a turnpike belonging to the 'Buffalo and Aurora Plankroad Company.' I think the evidence satisfactorily shows that it was in one of the public streets of the city. It was within its limits, and whether one of its streets or not, it was a highway used by the public, and that is sufficient to render it liable for the consequences of an excavation made under its direction and left unguarded." A municipality is under a positive or absolute duty to put its streets and highways in passable condition, and to keep them so by the exercise of reasonable care and supervision. The de-

cisions of this Court are to that effect. *Bunch v. Edenton,* 90 N. C., 431; *Russell v. Monroe,* 116 N. C., 720; *Dillon v. Raleigh,* 124 N. C., 184; *Foy v. City of Winston,* 126 N. C., 381; *Cresler v. Asheville,* 134 N. C., 311. Numerous other cases might be cited from our own reports, but those already given will suffice to show what the doctrine is, with its limitations. Very instructive and useful cases on this point are *Fitzgerald v. Concord,* 140 N. C., 110; *Brown v. Durham,* 141 N. C., 252; *Brewster v. Elizabeth City,* 142 N. C., 11; *Kinsey v. Kinston,* 145 N. C., 108; *Revis v. Raleigh,* 150 N. C., 353. They all tend to this conclusion, that a city or town or village must keep its streets in good condition and repair so that they will be safe for the use of its inhabitants or of those entitled and having occasion to use them. If they become unfit for use by reason of defects which could not be anticipated and consequently guarded against, under ordinary circumstances, the municipality should have some notice of the defect, either actual or else implied from the circumstances; and in this connection it must be said that it is the duty of the city (and of course these principles apply generally to all forms of municipalities) to exercise a reasonable and continuing supervision over its streets, in order that it may know they are kept in a safe and sound condition for use. Sometimes notice of their defective condition is actual or express, again it is constructive or implied, where, for instance, the defect has existed for such a length of time as to show that the city has omitted or neglected its plain duty of supervision; and still again, it may be inferred by the jury from the facts in evidence. This principle is illustrated and was applied in *Fitzgerald v. Concord, supra,* where it is said, approving 1 Sh. and Red. on Negligence, sec. 369: " 'Unless some statute requires it, actual notice is not a necessary condition of corporate liability for the defect which caused the injury. Under its duty of active vigilance, a municipal corporation is bound to know the condition of its highways, and for practical purposes the opportunity of knowing must stand for actual knowledge. Hence, when observable defects in a highway have existed for a time so long that they ought to have been seen, notice of them is implied, and is imputed to those whose duty it is to

BAILEY *v.* WINSTON.

repair them; in other words, they are presumed to have been discovered by the exercise of reasonable diligence.' And again, in the same section: 'It is only reasonable that notice of latent defects should not be so readily presumed from their continuance as open and obvious defects. If these were so dangerous as to challenge immediate attention, the jury is justified in finding a very short continuance of such condition to constitute sufficient notice. Active vigilance is required to detect defects from natural decay in wooden structures, like bridges, plank sidewalks, and the like, which will necessarily become unsafe from age; but the most that ought to be required is the use of ordinary diligence by making tests and examinations with reasonable frequency, to ascertain whether they are safe or not. It has been held that notice will not be implied unless the defect was so open and noticeable as to attract the attention of passers-by. But travelers are not charged with any duty to search for defects in a highway as road officers are, and the better rule, in our judgment, is that knowledge of a defect may be inferred, notwithstanding it may have escaped the attention of all travelers, or even of an officer frequently passing by. It is not a question whether all passers-by actually notice a defect, but whether it was noticeable.' And the decided cases support the doctrine as stated. *Jones v. Greensboro,* 124 N. C., 310, 313; *Kibele v. Philadelphia,* 105 Pa., 41; *Kunz v. Troy,* 104 N. Y., 346; *Pomfrey v. Saratoga, ibid.,* 459. On the question of notice implied from the continued existence of a defect, no definite or fixed rule can be laid down as to the time required, and it is usually a question for the jury on the facts and circumstances of each particular case, giving proper consideration to the character of the structure, its material, the time it has been in existence and use, the nature of the defect, its placing," and other considerations not necessary to be stated.

The general duty of a municipality with reference to the condition of its streets is discussed in *Gregg v. Wilmington,* 155 N. C., 18; *Jeffress v. Greenville,* 154 N. C., 490. The law applicable as between individuals is not the same when we come to consider the obligation of municipal authorities to the public, for in the latter case the duty to keep streets and highways in

repair and free from dangerous pitfalls is a positive one, which they cannot, as public trustees, delegate to another to perform and thereby relieve themselves from liability for nonperformance, or for negligence in the manner of doing the requisite work in the proper way. The doctrine of express notice is not relevant to the question, when the very danger is created by the city itself or by some one under its direction, for there notice is necessarily implied. The principle is well stated by Moll, sec. 141, as follows: "If the act or omission of the independent contractor is a violation of some primary or inalienable duty of the city, such as that of keeping its streets in a reasonably safe condition for public travel, the city will be liable therefor. The duty of a city to exercise reasonable care to the end that its highways, streets, sidewalks, etc., shall be reasonably safe for ordinary travel, is absolute in the sense that it is primary and cannot be delegated so as to absolve it. The duty rests on a municipal corporation to keep its streets in a safe and passable condition, and where a contractor with the city failed to place proper guards about an excavation, thereby causing injury to a passer-by, the city was held liable. And the city is nevertheless liable for the unsafe condition of its streets even where it exercises no control over the contractor in respect of the manner of doing the work, except to see that it is done according to certain specifications. It is on sound principle that a city is responsible for injuries proceeding from dangerous and unguarded excavations left in its highways by an independent contractor, and the very fact of the contract charges the city with notice that the street is being dug up and puts it on inquiry as to whether any excavation made by the contractor is properly guarded and lighted. Nor can a municipality claim exemption from liability from defects in a street by reason of its not accepting the work of the contractor, where the defect has existed long enough to charge its officials with knowledge. A city is chargeable with notice of the existence of a dangerous obstruction in one of its streets, where such defect is the result of the negligence of contractors under the city, so as to dispense with the necessity of giving it express notice of its existence." Applying these well-settled principles to the facts before us, as evidently found by

the jury, we have little difficulty in adjudging the liability of the defendant for the injury received by the plaintiff when he fell in the ditch.

There are some matters of evidence which require notice. The hypothetical questions put to the medical experts cannot be criticised for lack of evidence to support them. It was the duty of the judge, in the first instance, to decide whether there was any evidence of the facts assumed to exist, which he did, and then he left it to the jury to say whether the facts had been established by the proof, instructing them that, if they had not been, they should disregard the answers. We do not think the defendant can complain of the charge in this respect.

The questions tending to show the bias of one of the witnesses was competent, for it enabled the jury the better to determine the value of his testimony. It may have been slight, but there was enough evidence of a leaning towards the defendant to let it in, so that it might pass for what it was worth.

The case, it appears, was well tried and is, as we look at the record, free from any error.

No error.