This is an action for actionable negligence brought by plaintiff against the defendant, alleging damage.
The plaintiff, Mrs. Bertha Debnam, testified in part: "In the early part of the night of 12 May, 1934, I was coming home from down the street where I had been to the picture show. . . . I took Columbus Street. . . . In order to travel from the main street to my home, I travel Columbus Street a block and then come up northwardly almost a block. . . . I can't remember when I had been on that street before on foot. I had been on it in a car, but not walking. About 8 o'clock, *Page 619 
on 12 May, it was dark, there was not anything but starlight; there was no electric light on Columbus Street along there. There was a light on down the street, but it didn't throw any reflection on Columbus Street. There are some trees right above the side where I was walking but not right at it. There were leaves on the trees, but there were not trees where this lumber was; there were weeds. There is a light at the intersection of Columbus Street and the street I live on, but the trees hid that; they were east of me and obscured the light. Franklin Street runs parallel with the main street. I was walking on what was supposed to be the sidewalk. I didn't know anything about the obstruction until my foot went in it. I was walking awful fast, and I always carried my head up. I was walking on the sidewalk where I was supposed to be, there was not anything but a path, and when I took a step I was in something; naturally, when I stumbled in one thing I caught on the other foot, and went into something else, and it threw me over backwards, and the next thing I knew I was in a pile of lumber, or timbers. I did not see it, but I could only feel it; it seemed like a pile of lumber. The part I caught my foot in was across the portion I was walking on. My left hip was bruised as large as my hand on this side; my right side and neck were twisted. I went backwards; I didn't go forward. I caught with one foot and twisted and fell backwards on those timbers. I was not able to get up by myself right then; when I got out I crawled out. I did not get any assistance until I got on the sidewalk in front of my home, where I met my son-in-law and daughter."
K. W. Taylor, a witness for plaintiff, testified, in part: "Q. With reference to those timbers, did you go there immediately afterwards and see where she fell? A. Yes, sir. Q. Had you seen those timbers there before she fell? A. No, sir; I had not noticed. Immediately after the injury, when I went there, I found the timbers on the street there, between where the vehicles go and where you walk, and scattered along the edge. They were scattered, they were not piled straight. The ends of the timbers were sticking out on the traveled portion where travelers had to walk. There were boards in the path part of the sidewalk. . . . The light was not plain enough to see anything. You had to go down close to examine it and see the timber. She told us where she fell and my wife and I went along slow and examined it, and found the timbers she fell over. You could not see it by riding by. There were no lights to warn travelers that the timbers were there. It was not roped or wired. I don't remember that there were any weeds there. Yes, I know something about the town working the street alongthere before this. They were grading the street with shovels, cleaning outthis drain and throwing it out in the middle of the street, grading bothsides. I could not say how long this was before 12 May. It would not run *Page 620 
into months. I would not say weeks; it was very shortly before; it was before 12 May. The accident was after the work. The town forces were doing the work. I can't say how long it was before she was hurt. I don't think it was as much as a month. I did not know those boards were there before Mrs. Debnam fell. I saw them in the ditch before the town went to work there.They were not in the ditch after the town did the work. Before they worked there they were in the ditch. After they worked there, up until the injury, I did not see them there until she fell over them. They were not in theditch when I went there the night after the injury. They were lying on thesidewalk. They were the same pieces that had been in the ditch."
Brice Thompson, a witness for plaintiff, testified in part: "I live in the town of Whiteville, and was living here at the time of this alleged accident. I was familiar with Columbus Street. With reference to the condition of that street, they were building a new brick home and right in this special place floored a place across the ditch. The ditch was shallow, about a foot deep. The street owns it, and a bunch of men were shoveling the dirt out of the street, and throwing the lumber on the street. I suppose they worked there probably three or four days. I don't know who had supervision of the men working in the street. I saw the timbers after they were removed from the ditch. They were on the curb line of the sidewalk. With reference to weeds and grass, the sidewalk was pretty well grown up. There was a path that people walked. I don't recollect that I ever saw any light at night or any flag or anything to indicate to people walking along that these timbers were piled there. They were there before the accident, and afterwards. I passed them every day. They stayed there from the time they were put there until the house was built, about 2 or 3 months."
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Ans.: `Yes.'
"2. What amount, if any, is the plaintiff entitled to recover of the defendant? Ans.: `$1,000.'"
The court below rendered verdict on the judgment. The defendant made several exceptions and assignments of error and appealed to the Supreme Court.
At the close of plaintiff's evidence and at the close of all the evidence the defendant in the court below made motions for *Page 621 
judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.
The evidence which makes for plaintiff's claim, or tends to support her cause of action, is to be taken in its most favorable light for the plaintiff, and she is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.
The charge of the court below is not in the record, and the presumption is that the court below charged the law applicable to the facts. There is no issue as to contributory negligence and none set up in the answer. The only serious contention made by the defendant is that there was no sufficient evidence to be submitted to the jury that the defendant had either express or implied notice of the defects in the sidewalk.
We think the evidence sufficient to be submitted to the jury: (1) That the defendant town, in grading the street, put the boards on the sidewalk, and the danger was created by the town itself. (2) That the boards had been on the sidewalk such a length of time as to give the town implied notice.
In Markham v. Improvement Co., 201 N.C. 117 (120), citing numerous authorities, it is said: "The law imposes upon the governing authorities of a city or town the duty of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who may have occasion to use them in a proper manner. Such authorities are liable only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect and the occurrence of an injury; he must show that the officers of the city knew, or by ordinary diligence might have known, of the defect. But actual notice is not required. Notice of a dangerous condition in a street may be implied, and indeed will be imputed to the city or town if its officers should have discovered it in the exercise of due care. This principle has been adhered to in our decisions and is now regarded as firmly established." Kinsey v. Kinston, 145 N.C. 106; Bailey v. Winston,157 N.C. 252; Gasque v. Asheville, 207 N.C. 821.
For the reasons given, we find no error in the judgment of the court below.
No error. *Page 622