BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE, J., concur in dissent.
This is an action for actionable negligence brought by plaintiff, administrator, for killing his intestate, Elmo D. Barnes, alleging damage; the alleged injury being caused by the negligence, or the lack of due care, of the defendant in not keeping a manhole in its street in a reasonably safe condition, which the defendant knew, or in the exercise of due care should have known that it caused a direct hazard to persons operating motor vehicles and motorcycles, and that said negligence was the proximate cause of plaintiff's intestate being killed. Plaintiff's intestate was riding a motorcycle, which he was accustomed to riding, at the time of the fatal injury. The defendant denied negligence and set up the plea of contributory negligence. *Page 192 
The evidence on the part of plaintiff was to the effect that Elmo D. Barnes, plaintiff's intestate, was riding a motorcycle on Maury Street in the city of Wilson, which runs North and South. The street is four blocks long and is 20 feet wide at the manhole where the fatal injury occurred. It is 8 feet from the center of the manhole to the ditch on the east side and 12 feet to the west side of the street. A part of the street is soft but at the place where the accident occurred the ground approaching the manhole was hard. There are dwelling houses on both sides of the street. The manhole cover was about 5 or more inches deeper or lower than the street; the top lower than the street and about 5 inches larger than the manhole, in the shape of a bowl. The cover of the manhole is about 20 inches and the cast around it makes it about 2 feet. The drop was about 5 inches. The town worked the street with a scraper 3 months before the accident.
Henry Denkins testified, in part: "Elmo D. Barnes was running about 25 miles an hour. Manhole in the middle of the street, or whatever it was, and when he hit that hole the front wheel bounced up that high. When the front wheel bounced up the back wheel done the same thing and he lost control of it and the motorcycle throwed him. He was in a straddled position; the motorcycle on top of him. He made no evidence to kick, lying on this side, looked like this side of his eye was about out and his ears and nose bleeding. . . . I looked at the manhole and it was about like that below the surface of the street; about 6 inches or 5 1/2. Kinder round; that is the place he hit riding. The motorcycle went about 10 steps before it stopped. He fell kinder to the left of the center of the road; manhole kinder on the side. The manhole was kinder on the right side the way he was going."
Booker T. Denkins testified, in part: "Saw this man riding the motorcycle. He came across the manhole riding about 25 miles an hour and his back wheels went into a bounce as the front wheels reared up and it throwed him off and the motorcycle went about 10 feet. There was a drop of about 6 inches; I didn't measure it; 6 inches is about a full hand. It was in the shape of a bowl. The general nature of the soil was real hard."
The accident occurred about 6:00 o'clock in the evening of 16 September, 1938. The motorcycle had no lights on it, it was not dark enough for lights. It was in evidence that Elmo D. Barnes worked for different concerns and earned from $18.00 to $25.00 per week.
Mrs. Elmo D. Barnes testified, in part: "I would say his own living expenses at the time of his death and for a year or two before that were approximately between $10.00 and $15.00. I would say that his actual living expenses for a year before his death were $15.00 per week. He was in good health; good habits; raised in Wilson. He lived about one *Page 193 
mile from the Imperial Plant; he walked to work and did not own a motorcycle. He had ridden a motorcycle before the 16th day of September, off and on since we were married. . . . He died Sunday night at 11:30, the 18th of September. The accident occurred Friday, the 16th. He lacked 6 days of being 27 years old."
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff's intestate injured and killed by the defendant, as alleged? Ans.: `Yes.'
"2. Did the plaintiff's intestate, by his own negligence, contribute to his injury, as alleged in the answer? Ans.: `No.'
"3. What damage, if any, is plaintiff entitled to recover of the defendant? Ans.: `$8,000.'"
The court rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.
At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendant made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below refused these motions and in this we can see no error.
The evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.
In 28 Cyc., pp. 1358, 1359, 1360, the rule as to reasonable care and safety is thus stated: "Where the municipality is chargeable with notice or knowledge of defects or obstructions, the general municipal duty to exercise ordinary care to keep its streets in a reasonably safe condition is continuing and constant. Its liability is for negligence, however, and for negligence only. It is not liable for damages for every accident that may occur within its limits; it is not an insurer against all defects or obstructions in its streets and is not required or expected to do everything that human energy or ingenuity can do to prevent injury to the citizen; but its duty is to exercise reasonable care, and only this degree of care, to make and maintain its streets and walks reasonably safe for the purposes to which such respective parts are devoted, and for the use of persons traveling thereon in the usual modes, by day or by night, and who are themselves in the exercise of reasonable care, whether the defect *Page 194 
or condition causing the injury was created by the municipality itself or was created by some third person or by natural causes, and should in the exercise of ordinary care have been discovered and repaired. After it has notice, either express or implied, of the existence of defects or obstructions, no matter how they are caused, the obligation immediately arises to exercise reasonable care to restore the street, that it may again be reasonably safe for ordinary travel." The duty above set forth is on all who have the right to use its streets, automobiles, motorcycles, bicycles, wagons, buggies, etc.
In an action for personal injury from stepping into a hole in a sidewalk, defendant's negligence in removing a water meter and leaving a hole in the sidewalk four to seven inches deep for from 6 to 12 months held for the jury. Sehorn v. Charlotte, 171 N.C. 540. Whether hydrant attached to building and projecting nine inches over sidewalk constitutes nuisance is jury question. Swinson v. Realty Co., 200 N.C. 276.
In Gasque v. Asheville, 207 N.C. 821, the plaintiff was injured by stepping on the lid of a partly covered water meter box about 6 inches from the outside of the street. It tilted back and forth — the lid did not fit. The occurrence was about 9 o'clock at night in April. The charge of the court below (by Schenck, J., then on the Superior Court bench) was approved by this Court.
"The governing authorities of a city are charged with the duty of keeping their streets and sidewalks and water meter boxes in a reasonably safe condition; and their duty does not end with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. It is the duty of the city of Asheville to keep the streets, including the sidewalks and meter boxes thereon and nearby, in proper repair; that is, in such condition as that the people passing and repassing over them might at all times do so with reasonable care, speed and safety. It is not the duty of the city, however, to warrant that the condition of its streets and sidewalks and meter boxes shall be at all times absolutely safe. The city is not an insurer of their safety; the city is only required to exercise ordinary or reasonable care to make them safe. The city is only responsible for negligent breach of duty and to establish such responsibility it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the city knew or by the exercise of due care might have known of the defect, and that the character of the defect was such that injury to travellers therefrom might be reasonably anticipated. It will be observed that actual notice of a dangerous condition or defective structure is not required, but notice may be implied from *Page 195 
circumstances, and will be imputed to the city if its officers could have discovered the defect by the exercise of due care or proper diligence. Actual notice is not a necessary condition to render the city liable for a defect which causes an injury. Under its duty of actual diligence, a municipal corporation is bound to know the condition of its sidewalks or meter boxes, where the opportunity of such knowledge exists; the opportunity of knowing stands for actual knowledge. A city is presumed to have notice of such defects as it might have discovered by due care or reasonable diligence, but the most that is required of a city is the use of ordinary diligence by making inspections and examinations with reasonable frequency and due care to ascertain and remedy them. It is the duty of a city to exercise due care to keep its streets and sidewalks and meter boxes in good condition and repair, so that they will be safe for the use of its inhabitants, or those entitled and having occasion to use them. If they become unfit for use by reason of defects which could not be anticipated, and consequently guarded against, the municipality must have some notice of the defect before it can be held liable for any injury proximately caused thereby. Sometimes notice of such defects is actual or express, and, again, sometimes such notice is constructive or implied. It is the duty of a city to exercise a reasonable and continuing supervision over its streets and sidewalks in order that it may know they are kept in safe condition."Bailey v. Winston, 157 N.C. 252 (257); Bailey v. Asheville, 180 N.C. 645;Markham v. Improvement Co., 201 N.C. 117; Debnam v. Whiteville,211 N.C. 618; Ferguson v. Asheville, 213 N.C. 569.
Nonsuit on the ground of contributory negligence was properly denied.Cole v. Koonce, 214 N.C. 188; Ferguson v. Asheville, supra. The issue addressed to this defense was submitted to the jury with appropriate instructions, to which no exception was noted.
The defendant also noted exception to the charge on the issue of damages, and contends that the use of the phrase "this gross amount" in referring to the sum from which the present cash value of the pecuniary worth of the deceased was to be ascertained, was erroneous and constituted reversible error. While these words standing alone and disconnected from the words immediately preceding might be so construed, however, taken contextually, we find the charge free from error prejudicial to defendant. After charging the jury in accord with the rule laid down in Mendenhall v.R. R., 123 N.C. 275, and White v. R. R., 216, N.C. 79, the trial judge used this language: "I charge you that the measure of damages in the case is the present value of the net pecuniary worth of the deceased to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. . . . Now, after you have fixed upon the amount representing *Page 196 
the yearly earnings of the deceased, that is to say, his net annual income and the number of years he probably would have lived, you can, by multiplying the one by the other, determine approximately what would have been the gross amount of his net income during his whole life. This amount, this gross amount, must be reduced to its present cash value which would necessarily be less than the gross amount, and which may be arrived at by dividing the gross sum by one dollar plus the legal rate of interest (6%), for the expectancy years of the deceased, as the present worth of a sum payable at some future period without interest is such an amount as being put at interest will amount to the sum at the period when it becomes due."
It is thus apparent that the words "this gross amount" must be taken in connection with the sentence immediately preceding, and the pronoun "this" understood to refer to the gross amount of his net income during life. The use of the mathematical formula employed in the instant case was criticized in Ward v. R. R., 161 N.C. 179, and it was there recommended that its use be discontinued. In applying it here the base period employed was the entire period of the expectancy, which was erroneous, as the contemplated earnings would not have been postponed until the end of decedent's life. However, this error was one in favor of the appealing defendant and against plaintiff, and, as stated by Hoke, J., in Ward v. R. R., supra (187), "The mistake in the charge being in his favor, it may not be held for reversible error." However, the defendant makes no point as to this method of calculation. The only exception to the charge on the issue of damages referred to in defendant's brief relates to the use of the word "gross" hereinbefore discussed. Rule 28.
We conclude that in the trial below there were no prejudicial or reversible errors.
No error.