**Sherwood H. SMITH, Jr., Plaintiff,**

v.

**Harry E. FERGUSON and wife, Juanita Ferguson, and Thomas Ferguson, Defendants.**

Civ. No. 1621.

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 27, 1958.

488

McCarthy, Lane, & Adams, Jacksonville, Fla., Lee & Marler, Asheville, N. C., for plaintiff.

Harkins, Van Winkle, Walton & Buck, Herbert L. Hyde, Asheville, N. C., for defendants.

WARLICK, District Judge.

This is an action in which plaintiff seeks a recovery for injuries suffered and sustained through the alleged negligence of the defendants. Plaintiff is a resident of Jacksonville, Florida. The defendants reside in Sylva, Jackson County, in the Western District of North Carolina. The action was filed originally in this court and under the diversity of citizenship statute. 28 U.S.C. Sec. 1332. The hearing was had by the Court, a jury trial having been waived.

The facts are not greatly in dispute.

The defendants, Harry E. Ferguson and Juanita Ferguson are husband and wife; Thomas Ferguson is a son born of said marriage.

The defendant Thomas Ferguson and the plaintiff were close friends, each having attended the University of North Carolina for four years, and roomed together their last year; they belonged to the same Greek letter fraternity, and both were members of the Naval R. O. T. C. which was located at the University. Both graduated in the same class and were awarded their diplomas at Commencement on June 4, 1956.

Plaintiff's parents came to North Carolina from their home in Florida to attend the graduating exercises of their son; and the defendants Harry E. Ferguson and wife, Juanita Ferguson also came to Chapel Hill to be present at the Commencement exercises. Miss Eva Hargrave, the fiancee of the plaintiff had finished at Duke at its 1956 Commencement, and came over to Chapel Hill to attend the Carolina exercises.

Some time during the Commencement period plaintiff, his parents, and his fiancee had accepted an invitation from the defendants to visit in their home in Jackson County, and on the same day following graduation all went there so that they might be together for several days before the time when plaintiff and the defendant Tommy Ferguson were to report under orders for their assignment in the Armed Forces, as each held a commission received at the time of graduating from the University.

After their arrival at the home of the defendants, and on June 7, plaintiff and the other guests in the home of the defendants were invited to go on a trip to Lake Thorpe, a large body of water near Highlands, where defendants had a cabin. Plaintiff's parents, together with Harry E. Ferguson and Juanita Ferguson left Sylva around noon, going to the cabin at that time so that all needed arrangements could be made for the overnight visit,—it being agreed that plaintiff, Miss Hargrave, and the defendant, Tommy Ferguson, would come later,

bringing to the lake the Ferguson's boat, which was owned and maintained by them for their convenience and pleasure, including that of their guests. The boat was towed on a trailer by a Chevrolet pickup truck, the property of the defendants, Harry E. Ferguson and his wife, Juanita Ferguson. The Ferguson boat was of an inboard motor type. The trailer was a specially designed one, and when used would be attached to the rear of the truck through the medium of a ball and socket trailer hitch. The trailer was made of a metal frame, welded together, resting upon a single axle with a large rubber-tired wheel located at each end and with a tongue protruding from the front of the trailer, on the end of which was attached the trailer hitch. A small rubber-tired wheel was located directly under the front. The trailer was triangular in shape, and is comparable to those commonly used as a means for transporting boats on trips to watering places. The boat contained a Ford inboard motor, weighed 1,800 pounds, and was approximately 17½ feet long. The trailer weighed 400 pounds, a combined weight of 2,200 pounds. Following the attachment of the trailer to the Chevrolet pickup truck, and with the defendant Tommy Ferguson driving, and plaintiff and Miss Hargrave riding with him in the seat of the pickup, the trip was made from Sylva to Lake Thorpe in about one hour, arriving around 5:00 p. m.

The defendants frequently visited their cabin on Lake Thorpe and were entirely familiar with the need and methods involved in launching the boat, as such was necessary on each occasion when it was used, as the boat was invariably kept in a safe place at defendant's home in Sylva.

Arriving at the lake, defendant Tommy Ferguson, on leaving the highway, turned the truck around so that he was in a position to back the trailer down into the lake and by that means float the boat from the trailer. This was necessary in view of its excessive weight, and when it had been floated the trailer and truck would then be moved from the water's edge. He had launched it in this manner on many other occasions. Following this movement it was discovered that due to the slope of the banks at this place, the trailer could not be gotten far enough out into the lake so that the boat could be floated and that it had bogged down in the mud. Thereupon the trailer was disconnected from the pickup truck by the defendant Tommy Ferguson, who with plaintiff, undertook to push the trailer and the boat further out into the lake. This they were unable to do, but resulting from their efforts, the distance between the pickup and the trailer had widened to approximately 8–9 feet. The defendant Tommy Ferguson then got a 12 ft. woven wire cable, 3/16 of an inch in diameter, and consisting of seven strands, with a hook and chain at each end thereof from the truck, and attached one end thereof to the middle of the rear bumper of the truck, and the other end to the front hitch of the trailer, and directed plaintiff to push the truck, hoping by that means to free the trailer from the sand. After several trials this was not successful. Defendant Tommy Ferguson then suggested that Miss Hargrave drive the truck while he and the plaintiff pushed from the rear,—explaining to her in detail the operation of the gear shift on said truck and how to rock it back and forth. Her efforts proved unsuccessful. Then as a last resort defendant Tommy Ferguson told plaintiff that he would drive the truck and directed that plaintiff should push from the right rear of the truck; that he would rock the truck back and forth, by quick and violent movements, first to the rear and then to the front, and vice versa, hoping thereby to free the truck from the sand in which its rear wheels had become imbedded, and likewise remove the trailer and the boat from the lake. Miss Hargrave remained in the truck cab with Tommy. Plaintiff pushed as was instructed to do, and following several sustained efforts to bring about the result desired, the cable snapped and was completely severed, one end thereof violently

striking the plaintiff's right leg at about the ankle joint, and completely severing it in guillotine fashion. A tourniquet was made of such things as were available and applied and plaintiff was hurriedly carried to the Highlands Community Hospital where first aid was administered, but due to a lack of facilities was shortly thereafter carried to the C. J. Harris Community Hospital in Sylva where he was immediately admitted to surgery and the leg re-amputated a few inches higher. He was there approximately one week. Thereafter plaintiff was removed to the Naval Air Station in Jacksonville, Florida, where he remained for approximately five weeks, being later transferred to the United States Naval Hospital in Philadelphia for orthopedic treatment which brought about another operation to improve the condition of the end of his leg. Plaintiff remained in said Hospital in Philadelphia until February 9, 1957, when he was discharged on convalescent leave, returning to his home in Jacksonville, and later was medically retired from the Navy as an Ensign. Plaintiff's ambition was to become a naval aviator, and he had previously been successful in his aptitude test, and at the time of his injury was under orders to report to the Navy at Pensacola, Florida for flight training.

Tommy Ferguson had found this cable in the mountains of his home county some years back at a place where an airplane had wrecked and carried it home and had used it over that period of time for the same purpose that it was being used at the time it snapped, resulting in and bringing about plaintiff's injury.

Plaintiff and Miss Hargrave have subsequently married.

At the time when the cable broke in two from the effects of the violent rocking of the truck back and forth by the defendant, Tommy Ferguson, plaintiff was 2½ to 3 ft. to the right of the line of the cable, and when plaintiff first felt the sharp blow and fell back to a sitting position, his amputated foot was lying approximately 1½–2 ft. from him,—the amputation being about as clean as a hound dog's tooth. Plaintiff knew nothing about boats and their launching and had no previous experience in the means employed in this case,—and relied wholly upon the advice of defendant, Thomas Ferguson.

Plaintiff bases his cause of action on the negligence of the defendants, among other things in failing to warn him of the danger involved in the attempt to launch the boat as was being undertaken in this instance, in an unsafe manner, in providing a cable of insufficient tensile strength to withstand the strain,—and for that the cable was old, worn, and rusty, and in directing the plaintiff, a novice, in this effort to assume a position of danger and peril unknown to him, and in violently lurching the truck, thereby placing an added strain on the chain and in failing generally to warn plaintiff of his peril. The damage sought is in the alleged sum of $150,000.

Defendants contend from the evidence offered in the case that plaintiff was guilty of and chargeable with contributory negligence; that he voluntarily assumed the risk involved and that plaintiff and the defendant Tommy Ferguson were engaged in a joint enterprise, and thereupon deny any liability proximately arising from the facts alleged in the complaint.

It would seem that the defendants have abandoned their alleged defenses of assumption of risk and joint enterprise as nothing is brought forward in the brief, and argument thereon was not advanced when the hearing came about, and wisely so, it would seem, as the case is wholly devoid of any evidence to support such defenses.

Evidently these defenses were pleaded out of an abundance of precaution. Each defendant does however rely on a general denial of liability, together with the added defense of contributory negligence.

Thus it would seem that three issues arise on the pleadings and the evidence offered in this cause,—negligence, contributory negligence and damage. Plaintiff would obviously have the bur-

den of proof on the first and third issues, and the defendants the burden of the second issue.

■ Though the defendants deny the agency of Thomas Ferguson in their joint answer filed, the evidence is plenary that he acted with full authority herein and his acts and deeds were legally those of his co-defendants. Actually the case was tried on such theory.

■■ Negligence is best defined as a failure to exercise that care which a reasonably prudent person would exercise under the same or similar circumstances. It always arises from a breach of duty.

"To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach. Ramsbottom v. Atlantic Coast Line R. Co., 138 N.C. 38, 41, 50 S.E. 448. Plaintiff's action is in tort. Even so, the duty owed by defendant to plaintiff arises from and is determined by the relationship subsisting between them. Pinnix v. Toomey, 242 N.C. 358, 87 S.E.2d 893." Petty v. Cranston Print Works, 243 N.C. 292, 90 S.E.2d 717, 721.

A careful study of the evidence in this case must lead one to the positive conclusion that the legal duty owed plaintiff by the defendants under the circumstances in which they were placed, was breached and that plaintiff's injuries and resulting damage came about proximately from the negligence of the defendants. They knew the weight of the boat and of the trailer, and of the length of time that the cable had been carried in the truck for the uses to which it had theretofore been put and was actually used on this occasion; should have learned and consequently been aware of the weakness of this 3/16 inch cable, composed of only seven strands, and that it was not suitable for the purposes for which it was used in this instance. Of this the plaintiff could not have been aware, and not being warned of its inherent weakness and on the contrary being told by Thomas Ferguson that it had been often used for that purpose, would all indicate a carelessness and a recklessness amounting to a failure to exercise that care under all the circumstances which a prudent man would otherwise exercise, and that responsibility would result. This line of thinking is clearly evidenced in many cases decided by the Supreme Court of North Carolina.

"In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." Hudson v. Atlantic Coast Line R. Co., 142 N.C. 198, 199, 55 S.E. 103, 105.

Considering the evidence in this case in line with the above authority and many others, I would answer the first issue in the affirmative, for that I conclude that plaintiff has successfully carried the burden of proof.

Taking up the second issue,—that of contributory negligence, the defendants contend among other things that plaintiff's right foot in some way became entangled in a loop or kink in the cable which they contend was formed when the cable had become slack, following the rocking of the pickup truck, and in releasing the pull on the trailer, and that plaintiff indifferently and in disregard of his safety, stepped into such loop or kink and that in that manner his foot was severed, as the next forward movement was made by the truck.

I am not impressed with this contention as it would not appear likely that the injury suffered by plaintiff could have been sustained in this manner. The distance between the trailer and the truck as each was bogged down was too

great when one considers the length of the cable, for a link or loop to have formed sufficiently large so as to permit plaintiff's foot to have become entangled therein. Then, too, the cable was severed, which obviously advances the conclusion that the injury suffered by plaintiff came about from the snapping of the cable, as the evidence discloses, and its violent backlash, striking plaintiff's leg with such force as to cut it in two. I fail therefore to find any evidence which from its greater weight would show that plaintiff contributed to his alleged injury and damage in this or any other manner. I therefore answer the second issue "No".

On the third issue we find the rule for the estimation of damage in North Carolina to be as follows:

"In this class of cases, if the plaintiff is entitled to recover at all he is entitled to recover as damages one compensation—in a lump sum—for all injuries, past, present and prospective in consequence of the defendants' negligent acts. These are understood to embrace indemnity for actual nursing or medical expense, and loss of time or loss from inability to perform labor or capacity to earn money. The plaintiff is to have a reasonable compensation, if he is entitled to recover at all, for the loss of both bodily and mental powers and for actual suffering, both of body and mind, which are the immediate and necessary consequences of the injury. And it is for you, gentlemen of the jury, to say under all the circumstances what is a reasonable and fair sum which the defendants should pay to the plaintiff, by way of compensation, for the injury he has sustained. The age of the plaintiff, his occupation, the nature and extent of his ability to work, his

earning capacity at the time of the injury, or whether he was employed or not, or whether he was able to go to school or not, are all matters to be considered by the jury. * * * The award is to be made on the basis of a [present] cash settlement of the plaintiff's injuries, past, present and prospective. * * * The sum fixed by the jury should be such as fairly compensates the plaintiff for injuries suffered in the past and those likely to occur in the future. The verdict should be rendered on the basis of a [present] cash settlement of the plaintiff's injuries, past, present, and prospective." Ledford v. Valley River Lumber Co., 183 N.C. 614, 112 S.E. 421; Shipp v. United Stage Lines, 192 N.C. 475, 135 S.E. 339, 340.

This case presents quite an unusual set of circumstances, tragic and pathetic, and through which we find a young man maimed and in a certain sense partially incapacitated for life, and deprived in some measure at least of a full ability to earn what he otherwise would have been able to make but for this injury suffered by him.

No recovery is allowed herein for indemnity for actual nursing or medical expenses incurred by the plaintiff at the various hospitals in which he was placed, or due to the many doctors who otherwise treated him following his injury, as all of these expenses, large that they must have been, have evidently been entirely assumed by the Navy, since plaintiff was under orders to report for active duty at the time of his unfortunate experience.

■ I set plaintiff's damage at $16,500, and authorize such amount as his recovery of the defendants and each of them, together with costs.

Counsel will submit decree.